UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JESSICA YURICH | § | |
| | § | |
| v. | § | CIVIL NO. 4:25-CV-362-SDJ |
| | § | |
| CASH REGISTER SERVICES, INC. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cash Register Services, Inc.'s Motion to Transfer Venue. (Dkt. #8). Defendant asks that the Court transfer this case to the Northern District of Texas, Lubbock Division. (Dkt. #8 at 1); *see also* (Dkt. #13). Plaintiff Jessica Yurich opposes the motion. (Dkt. #12). Because Defendant has demonstrated that the Lubbock Division of the Northern District of Texas is a clearly more convenient venue for this action, the Court will grant the motion.

## I. Background

This is an employment discrimination and retaliation case. Defendant Cash Register Services, Inc., doing business as TRUNO Retail Technology Solutions ("Truno"), is a retail technology services company based in Lubbock, Texas. (Dkt. #3 ¶¶ 3–4). Plaintiff Jessica Yurich worked for Truno as a service technician for two years. *See* (Dkt. #3 ¶¶ 2, 12, 23). During that time, Yurich worked entirely remotely from her home in the Dallas–Fort Worth area. (Dkt. #3 ¶ 12). Yurich alleges that Truno paid her less than similarly situated male employees and otherwise discriminated against her on the basis of sex. *See* (Dkt. #3 ¶¶ 31, 35–36). Yurich further alleges that Truno fired her because of her sex or in retaliation for her opposition to its discriminatory conduct. *See* (Dkt. #3 ¶¶ 31, 36).

Yurich sued Truno in April 2025, *see* (Dkt. #1), and amended her complaint four months later, *see* (Dkt. #3). She brings claims under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and the Texas Commission on Human Rights Act ("TCHRA"). *See* (Dkt. #3 ¶¶ 29–37). Truno now moves to transfer this case to the United States District Court for the Northern District of Texas, Lubbock Division, under 28 U.S.C. § 1404(a). *See* (Dkt. #8).

## II. Legal Standard

Section 1404(a) permits the transfer of civil actions for the convenience of the parties and witnesses, and in the interest of justice, to other districts or divisions where the plaintiff could have properly brought the action. 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case under Section 1404(a), *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 311 (5th Cir. 2008) (en banc), and Section 1404(a) motions are adjudicated on an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (cleaned up).

The party seeking a transfer under Section 1404(a) must show good cause. *Volkswagen II*, 545 F.3d at 315. In this context, showing good cause requires the moving party to "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id.* (cleaned up). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.*

Conversely, when the movant demonstrates that the proposed transferee venue is clearly more convenient, the movant has shown good cause, and the court should transfer the case. *Id*. The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

To determine whether a Section 1404(a) movant has demonstrated that the proposed transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Volkswagen II*, 545 F.3d at 315. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. (cleaned up). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*. (alteration in original) (cleaned up).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id*. Moreover, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d

285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of clearly more convenient." *Quest NetTech*, 2019 WL 6344267, at *7 (cleaned up); *see also In re Radmax*, 720 F.3d at 290 (holding that courts abuse their discretion when they deny transfer solely because the plaintiff's choice of forum weighs against transfer).

## III. Discussion

This case has little connection to the Eastern District of Texas. Although Yurich worked remotely from her home in the Eastern District, all of the allegedly unlawful employment practices occurred in the Northern District of Texas at Truno's Lubbock office, including the decisions surrounding Yurich's compensation and eventual firing. *See Eakin v. Cook Med. LLC*, No. CV 23-1265, 2025 WL 662823, at *5 (W.D. La. Feb. 28, 2025) ("In an employment discrimination case, the operative facts are deemed to occur in the district where the unlawful employment decisions were made rather than where they were felt."); *Fowler v. Deloitte & Touche, LLP*, No. CV 15-2695, 2017 WL 1293983, at *8 (W.D. La. Mar. 24, 2017) ("When Plaintiff was terminated, this decision came from the Dallas office, and so Plaintiff's termination was 'committed' in Dallas[.]"); *Osborne v. AECOM*, No. 5:18-CV-668-DAE, 2019 WL 13082170, at *4 (W.D. Tex. May 16, 2019) ("[T]he cause of action follows the place where the decisions were made, not the place where the employee was or is found—even if it was work that sent the employee to that other location."). Unsurprisingly, then, nearly all of the expected witnesses and relevant documents are also located in

the Northern District. For these reasons, and as explained further below, the Court will transfer this case to the Northern District of Texas.

**A. Threshold Venue Inquiry**

The threshold inquiry on a Section 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). All of Yurich's claims, brought under two federal statutes and one state statute, could have been brought in the Northern District of Texas. The Court addresses each statute's venue provision in turn.

Title VII claims may be brought "(1) 'in any judicial district in the State in which the unlawful employment practice is alleged to have been committed'; (2) 'in the judicial district in which the employment records relevant to such practice are maintained and administered'; (3) 'in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice'; or, if the respondent is not found within any of these districts, (4) 'within the judicial district in which the respondent has his principal office.'" *Thompson v. Lockheed Martin Corp.*, No. 4:25-CV-1123-SDJ, 2026 WL 1662629, at *2 (E.D. Tex. June 9, 2026) (quoting 42 U.S.C. § 2000e-5(f)(3)). Here, Yurich could have brought her Title VII claims in the Northern District because the alleged discrimination occurred there, Truno's employment records are maintained there, and Truno's principal office is located there. *See* (Dkt. #8 at 11–12).

The general venue statute, 28 U.S.C. § 1391, governs Yurich's Equal Pay Act and state-law claims.[1] Such claims may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Here, venue would have been proper in the Northern District of Texas under either the first or second category above: The Northern District has personal jurisdiction over Truno for purposes of this civil action, so Truno "resides" there. *See* 28 U.S.C. § 1391(c)(2) (explaining that a defendant entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). And a substantial part of the discrimination giving rise to Yurich's claims "occurred" at Truno's Lubbock office in the Northern District.

**B. The Private-Interest Factors**

Having found that this case could have been brought in the Northern District of Texas, the Court will analyze each of the private- and public-interest factors to determine whether Truno has demonstrated that the Northern District is a "clearly more convenient" forum for this case than the Eastern District of Texas.

---

[1] *Reborn v. Nevada State Educ. Ass'n*, No. 4:14-CV-269-A, 2014 WL 2960011, at *5 (N.D. Tex. June 30, 2014) (Equal Pay Act claims governed by general venue statute); *Fowler*, 2017 WL 1293983, at *2 (state-law claims governed by general venue statute).

**i. Access to the Sources of Proof**

When analyzing the first private-interest factor, courts interpret "sources of proof" to encompass "non-witness evidence, such as documents and other physical evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020); *accord Volkswagen II*, 545 F.3d at 316. Courts in this District have held that this factor weighs in favor of transfer "when a majority of the tangible and documentary evidence is located in the transferee court's district." *Arnold v. Remington Arms Co.*, No. 6:16-CV-0074-RWS-KNM, 2017 WL 9285419, at *2 (E.D. Tex. Feb. 17, 2017) (collecting cases). Parties must specifically identify and locate sources of proof and explain their relevance. *See Utterback v. Trustmark Nat'l Bank*, 716 F.App'x 241, 245 n.10 (5th Cir. 2017); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-CV-513-JRG, 2018 WL 2329752, at *5 (E.D. Tex. May 23, 2018).

Notwithstanding well-known advances in technology and the digitization of data, courts continue to consider the relevance and importance of the physical location of these sources. *See Volkswagen II*, 545 F.3d at 316. The Fifth Circuit has explained that a decreased inconvenience in access to proof due to technological advances "does not render this factor superfluous." *Id*. "Thus, the physical location of evidence—even if stored electronically—remains a relevant consideration for the convenience analysis. However, the realities of electronic retrieval and delivery is an established reality that must bear some weight even while not making this factor superfluous." *Japan Display Inc. v. Tianma Microelectronics Co.*, No. 2:20-CV-283-JRG, 2021 WL 3772425, at *4 (E.D. Tex. Aug. 25, 2021) (cleaned up).

Here, Truno argues that "[t]he relevant sources of proof likely include Yurich's personnel file, internal company policies and procedures regarding employee compensation, pay data, comparator information, and internal communications—all of which are [housed on computer servers] at Truno's principal office in Lubbock, Texas." (Dkt. #8 at 5). Yurich does not seriously dispute that most relevant documentary evidence is located in the Northern District at Truno's Lubbock office. *See* (Dkt. #12 at 5–6). Nevertheless, she argues that this factor is neutral because some relevant documents are located in the Eastern District, or at least accessible from the Eastern District by virtue of their electronic form. According to Yurich, these documents include "her own work product, communications she sent and received, and evidence of how she was treated compared to male employees." (Dkt. #12 at 6).

Yurich's arguments are unconvincing. For starters, Yurich hasn't specifically identified the "work product" or other "evidence" she believes is located in the Eastern District or explained its relevance. Nor has Yurich definitively alleged that the "communications" she references are actually located in the Eastern District. *See* (Dkt. #12 at 6) (alleging that some relevant communications "are located in *or accessible from* the Sherman Division" (emphasis added)). Presumably, many of those communications were sent and received via Truno's email or messaging platforms and are therefore located on Truno's servers in Lubbock. *See* (Dkt. #3 ¶¶ 17, 23) (referencing emails relevant to Yurich's claims).

Finally, to the extent Yurich argues that this factor is neutral or superfluous by virtue of electronic document storage, that argument has been foreclosed by Fifth

Circuit precedent. "That the majority of relevant documents are electronic may affect the weight a court gives this factor, but it does not render this factor superfluous or neutral." *Gatekeeper Sols., Inc. v. Darktrace, Inc.*, No. 4:24-CV-723-SDJ, 2025 WL 3231248, at *3 (E.D. Tex. Nov. 19, 2025) (cleaned up). Because most of the relevant documents in this case are located in the Northern District of Texas, and few, if any, are located in the Eastern District of Texas, this factor weighs slightly in favor of transfer.

#### ii. Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private-interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal Rule of Civil Procedure 45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1). As for party witnesses, a court may issue subpoenas "within the state where the person resides, is employed, or regularly transacts business in person." *Id.* Because party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards *unwilling* third-party witnesses." *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-CV-79, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (emphasis added).

Here, Truno identifies at least two potentially unwilling third-party witnesses, both former employees of Truno named in Yurich's complaint. *See* (Dkt. #8 at 5). Both live and work in the Lubbock area, *see* (Dkt. #8 at 5–6), and are therefore within the 100-mile subpoena power of the Northern District's Lubbock Division. Neither party

has identified any potential third-party witnesses located in or within 100 miles of the Eastern District.

In her response, Yurich claims that Truno "has not identified any specific non-party witnesses whose testimony would be essential and who could only be compelled in Lubbock." (Dkt. #12 at 7). That is simply not true. As explained above, Truno has identified two such non-party witnesses residing in the Lubbock area. Importantly, those witnesses are two of the three comparators that Yurich identifies in her complaint, whose testimony is likely to be essential. *See* (Dkt. #13 at 2–3). Thus, this factor weighs in favor of transfer.

**iii. Cost for Willing Witnesses**

Private-interest factor three, which focuses on the "cost of attendance for willing witnesses," *Volkswagen II*, 545 F.3d at 315, "is probably the single most important factor in transfer analysis," *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006)). It is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment. *Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citation omitted).

The parties identify sixteen expected witnesses here: fifteen current or former Truno employees named in Yurich's complaint, and Yurich herself. *See* (Dkt. #8 at 5); (Dkt. #12 at 9). All but one of the current or former employees live and work in the Lubbock area, and the only expected witness that lives in the Eastern District is Yurich herself. (Dkt. #8 at 6); (Dkt. #12 at 9). Thus, the Northern District's Lubbock Division is clearly more convenient for the majority of expected witnesses. And because the distance between Lubbock and Plano is about 340 miles, (Dkt. #8 at 6)—well over the 100-mile threshold—this factor weighs strongly in favor of transfer. *See In re Radmax*, 720 F.3d at 289 ("[The witness-cost] factor has greater significance when the distance is greater than 100 miles.").

**iv. All Other Practical Problems that Make Trial Easy, Expeditious, and Inexpensive**

The fourth private-interest factor is "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. In particular, "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013).

Nothing here suggests that a transfer would be inefficient. The proceedings are at an early stage, and the Court has not gained substantial familiarity with the case. In sum, the parties have not raised, and the Court has not identified, any reason why judicial economy would be served—or, alternatively, frustrated—by transferring this

matter to the Northern District of Texas. Private-interest factor four is therefore neutral.

**C. The Public-Interest Factors**

The parties submit that the third and fourth public-interest factors—the forum's familiarity with governing law, and avoidance of unnecessary conflict-of-law issues—are neutral in the transfer analysis. *See* (Dkt. #8 at 8–9); (Dkt. #12 at 12). The Court agrees. Both the Eastern District of Texas and the Northern District of Texas are competent to resolve employment discrimination disputes. And no conflict-of-law issues have been presented in this matter.

The Court now addresses the remaining public-interest factors concerning court congestion and local interests.

**i. Court Congestion**

The first public-interest factor concerns "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. In the transfer analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *In re Genentech*, 566 F.3d at 1347.

Truno argues that this factor weighs in favor of transfer because the Northern District, as a whole, has fewer pending cases than the Eastern District and resolves those cases quicker on average. As of June 30, 2025, the Eastern District had 6,777 pending cases; the number of pending cases per Eastern District judge averaged 847;

and the median time from filing to disposition for civil cases was 7.1 months. (Dkt. #8 at 17). The Northern District, by contrast, had 6,259 pending cases; the number of pending cases per judge averaged 522; and the median time from filing to disposition for civil cases was 5.8 months. (Dkt. #8 at 18).

Yurich objects to Truno's "district-wide statistics that may not accurately reflect the actual docket situation in the specific Sherman Division versus the Lubbock Division." (Dkt. #12 at 11). The Court agrees that division-specific statistics could be helpful in this analysis, but Yurich fails to present any division-specific data to support her objection, and the district-wide information offered by Truno does not demonstrate meaningful differences between the Northern and Eastern Districts. Under the circumstances, and given that court congestion is the most speculative factor, the Court concludes that it is neutral.

**ii. Local Interests**

The second public-interest factor, which focuses on the local interest in having localized interests decided at home, "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (cleaned up). Important considerations include the location of the injury, witnesses, and the plaintiff's residence. *Id.* (citing *Volkswagen II*, 545 F.3d at 317–18). As the Fifth Circuit has made clear, "the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (cleaned up).

Here, the local-interests factor weighs in favor of transfer because the events giving rise to this suit occurred in the Northern District of Texas. *See Eakin*, 2025 WL 662823, at *5 ("In an employment discrimination case, the operative facts are deemed to occur in the district where the unlawful employment decisions were made rather than where they were felt."). To be sure, Yurich lives in the Eastern District, worked in the Eastern District, and suffered an injury in the Eastern District. Ultimately, though, "the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024). The non-party citizens of the Northern District likely have a greater interest in this case than those of the Eastern District because Truno has a significant presence in the Northern District and almost no presence in the Eastern District. *See* (Dkt. #8 at 12). Indeed, Yurich was Truno's only employee in the Eastern District. (Dkt. #8 at 1). If Truno has in fact engaged in employment discrimination on the basis of sex or otherwise, as Yurich alleges, it is the citizens of the Northern District who are more likely to be affected by that discrimination and thus have an interest in this case.

* * *

In sum, four of the eight transfer factors weigh in favor of transfer, and the rest are neutral. A motion to transfer venue should be granted if the moving party shows that one venue is "clearly more convenient" than the other. *In re Genentech*, 566 F.3d at 1342. The Court, having considered the facts and law, concludes that the Northern District of Texas, Lubbock Division, is clearly the more convenient venue to resolve this action than the Eastern District of Texas.

## IV. CONCLUSION

For these reasons, Defendant Cash Register Services, Inc.'s Motion to Transfer Venue, (Dkt. #8), is **GRANTED**.

It is therefore **ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Northern District of Texas, Lubbock Division.

It is further **ORDERED** that the parties' Joint Motion to Modify Scheduling Order, (Dkt. #20), is **DENIED as moot**.

**So ORDERED and SIGNED this 7th day of July, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE